NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PATRICIA J. SALLES<br><br>              Plaintiff,<br>v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY<br><br>              Defendant. | Civ. No. 05-0394 (WGB)<br><br>**O P I N I O N** |

**APPEARANCES:**
James H. Langton
Langton & Alter, Esquires
2096 St. Georges Avenue
P.O. Box 1798 Rahway, NJ 07065

        Counsel for Plaintiff

Christopher J. Christie
United States Attorney

Peter S. Krynski
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278

        Counsel for Defendant


**Bassler, Senior District Judge:**

    Plaintiff Patricia J. Salles brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff seeks a review of the final decision of the Commissioner of Social Security, as delivered by Administrative Law Judge Gerald J. Ryan ("ALJ"), which denied

her application for Supplemental Social Security Income Benefits. For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

Plaintiff Patricia Salles is a 55-year-old[1] woman with a high school equivalency education.  Her past relevant work experience includes a position as a telemarketing manager, from around November 1999 to January of 2001.  (R. at 31-32.)  She testified that while employed, she began having trouble seeing the information she was supposed to read from a computer screen, and she subsequently quit her job.  (Id.)  In April of 2001, Ms. Salles filed for Supplemental Social Security Income Benefits, claiming a disability as of March 1972.  (R. at 78.)

The disability Ms. Salles referred to in her 2001 application was the result of an accident at her former workplace.  A bottle of

---

[1] Ms. Salles stated in her testimony before the ALJ that her date of birth was August 1, 1951 (R. at 29), and all Social Security and New Jersey Department of Labor records consistently use this date.  It is worth noting, however, that other portions of the record place Ms. Salles's date of birth at August 1, 1956, including the report of Dr. I. Keller (R. at 159), the report of Dr. Cheryl O'Brien (R. at 160), and the records from Highland Park Family Practice (R. at 161-68).  And, her own Complaint, filed in January 2005, states that she is "now 52 years of age," Complaint at 1, which would seem to put her year of birth at 1953.

For the purposes of this Opinion, the Court will assume that the 1951 year of birth on file with the Social Security Office is correct.

ammonia exploded near her face, causing her to lose vision completely in her left eye. (R. at 45.) She retains vision in her right eye, but she claims that the strain upon it causes her to suffer from headaches, and that both of her eyes are subject to tearing, blurring, and light sensitivity. (R. at 45-49.) Although she wears glasses to correct the visual acuity in her right eye, Ms. Salles testified that the bifocal nature of the lenses causes her to feel dizzy, which in turn causes her to fall, as she did when she injured her back and hip in 2001.[2]  (R. at 49.)

In addition to her visual problems, Ms. Salles complains of other physical limitations, which prevent her from working. She was diagnosed in August of 2001 with hepatitis C (R. at 213), and she has also recently been diagnosed with HIV.[3]  At the hearing

---

[2]Although Ms. Salles stated in her testimony before the ALJ that she "had a fall" resulting from "an equilibrium problem," the record is unclear as to the exact cause of the fall. (R. at 32.) The Sept. 2001 report from Dr. Irving states that "on March 20, 2001, [Plaintiff] was walking when her shoe got caught in a crack in the pavement. As a result, she fell to the right side sustaining injuries in her right hip and lower back." (R. at 177.)

[3]The exact date that Plaintiff was diagnosed with HIV is not clear from the record. She did not list HIV as an impairment in her April 2001 SSI application (R. at 78-102); there is no mention of it in Dr. Goldberg's report of September 2001 (R. at 172-73), nor in Dr. Roque's report of April 2002 (R. at 213). In fact, the record includes only two mentions of Plaintiff's HIV status: her statement to Counsel during her April 2003 hearing before the ALJ (R. at 43), and the behavioral evaluation records of the University of Medicine and Dentistry, University Behavioral Healthcare (hereinafter "UBH") (R. at 280), which were not received by the ALJ prior to his rendering a decision, and thus were not included in his review. Def. Br. at 11.

before the ALJ, Ms. Salles complained of back and hip pain (R. at 38-39), severe headaches (R. at 31), gastrointestinal problems (R. at 49-51), liver disease (R. at 31), and problems with incontinence (R. at 53-55).

Plaintiff has seen a number of physicians and specialists. Her treating doctor, Arthur Miller, M.D., reported in August of 2001 that she was unable to work due to lower back pain and hepatitis C infection (R. at 150). He further found gallstones and elevated liver enzymes, and he recommended treatment for the hepatitis following a liver biopsy and cholecystectomy.[4]  (R. at 150.)  He prescribed codeine for her back pain.

Dr. Miller subsequently referred Ms. Salles to Michael S. Goldberg, M.D., a gastroenterologist. (R. at 152, 170.)  Dr. Goldberg examined Ms. Salles in September 2001, and his impression was that she might have had acute cholecystitis,[5] which appeared to have been effectively treated with antibiotics, but that further testing might reveal a need for a laparoscopic cholecystectomy and a liver biopsy. (R. at 170-71.)  The record contains no evidence that either of these procedures was ever performed.

In April 2001, an MRI of the lumbar spine performed by I. Keller, M.D., revealed "degenerative disc cartilages ... with

---

[4]Surgical removal of the gall bladder. STEDMAN'S CONCISE MEDICAL DICTIONARY 187 (2d ed. 1994).

[5]Inflammation of the gall bladder.  Id.

secondary degenerative changes." (R. at 159.)  A subsequent x-ray examination of Ms. Salles's lumbosacral spine, pelvis and right hip performed by Dr. Cheryl O'Brien was "unremarkable," and revealed no evidence of "acute fracture, dislocation or other osseous[6] abnormality."  (R. at 160.)

In September 2001, Ms. Salles saw Dr. Robert J. Irving, who found evidence of muscle, ligament and fascia disorder, as well as lumbar and sacral spine injury with nerve root involvement, and a strain or sprain to the right hip.  (R. at 177-78.)  Dr. Irving prescribed physical therapy and recommended both a neurological consultation and an orthopedic consultation.  (R. at 178.)  The record does not indicate whether these subsequent consultations were ever performed.  An April 2002 examination, however, conducted by consulting doctor Celia Roque, M.D. at the request of the New Jersey Department of Labor, revealed that Ms. Salles walked with a "normal gait, without a hand held assistive device," and that her chronic lower back and hip pain was "probably secondary to degenerative joint changes/arthritis."   (R. at 214-15.)

Plaintiff has also had several examinations to determine the severity of her visual impairments.  A 1999 examination performed by the New Jersey Department of Corrections indicated problems in only the left eye.  (R. at 139-47.)  A September 2001 report submitted by Dr. Louis Press revealed that Ms. Salles had corrected

---

[6]Bony.  Id. at 729.

vision of 20/30, normal fundus, clear lens, normal pupillary response to light, and no lesions in her right eye. (R. at 173.) Noting that Ms. Salles had complained that her right eye had been "getting worse recently," Dr. Press stated that "some of her symptomatology can be related to her being monocular." (R. at 172-73.) While a visual field performance revealed "an abnormal pattern with just a residual field inferiorly [sic], [t]his did not correlate with the ocular findings present." Defendant interprets this statement to mean that the testing was unreliable. Def. Br. at 11. Plaintiff interprets this same language to mean that "one sighted eye has constricted visual fields which cause dizziness and an inability to see clearly and peripherally." Pl. Br. at 19.

At the outset of her April 2002 examination, Ms. Salles told Dr. Roque that her right eye vision had deteriorated and that her vision was blurry. (R. at 213.) Dr. Roque's report indicates that Ms. Salles's corrected vision was 20/40, and that her right eye was clear and reactive to light. (R. at 214.) Although Dr. Roque noted that Ms. Salles had no vision in her left eye, she nevertheless concluded that she appeared to have "no physical functional limitations in performing activities of daily living and instrumental activities of daily living." (R. at 215.)

Finally, Ms. Salles complains of a mental impairment, depressive disorder, which also renders her unable to work. See Pl. Br. at 18 (The ALJ "never mentions plaintiff's major

depression."); see also R. at 277-328 (records of Ms. Salles's behavioral evaluation and treatment at UBH). As noted above, however, the ALJ did not receive evidence tending to show depressive disorder, and the Appeals Council, which did receive the UBH records, found that the new evidence did not warrant a new decision by the ALJ. (R. at 4-5.)

Based on the above evidence, Administrative Law Judge Ryan came to the following conclusions:

1. The claimant has not engaged in substantial gainful activity since her application.
2. The claimant's left-eye blindness and degenerative disc disease of the lumbosacral spine are severe impairments, based upon the requirements in the Regulations (20 C.F.R. § 416.921).
3. These medically determinable impairments do not meet or medically equal one of the listed disorders in Appendix 1, Subpart P, Regulation No. 4.
4. The claimant's allegations regarding her limitations are not totally credible.
5. The medical opinions contained in the record regarding the severity of claimant's impairment have been carefully considered.
6. The claimant's residual functional capacity ("RFC") is light work not involving unprotected heights or proximity to

>     hazardous machinery.

7.   The claimant's past relevant work as a telemarketing manager did not require the performance of any work-related activities precluded by her RFC (20 C.F.R. § 416.965).

8.   The claimant's medically determinable left-eye blindness and degenerative disc disease do not prevent her from performing her past relevant work.

9.   The claimant has not been under a "disability," as defined in the Act and Regulations, at any time through the date of the decision (20 C.F.R. § 416.920(e)).  (R. at 20-21.)

The ALJ signed his decision on May 23, 2003.  On November 19, 2004, after making the UBH records part of the record, the Appeals Council denied Ms. Salles's request for review and certified the ALJ's decision as the final decision of the Commissioner.  Ms. Salles subsequently filed an appeal with this Court.

**II. Discussion**

   **A. Standard of Review**

   This Court has jurisdiction to review the factual findings of the Commissioner in disability cases pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  In reviewing the findings of the Commissioner, the Court seeks to determine whether the findings are supported by "substantial evidence."  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 545 (3d Cir. 2003) (citing Richardson v.

Perales, 402 U.S. 389, 390 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. at 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "It consists of more than a mere scintilla of evidence but less than a preponderance." Stunckard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988) (citing Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979)).

If supported by substantial evidence, the Commissioner's findings are conclusive and will be upheld.  See 42 U.S.C. § 405(g).  "Neither the district court nor [the appellate court] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).  The role of this Court is to review the record and determine whether there is substantial support for the ALJ's finding that Ms. Salles is not disabled and thus ineligible to receive benefits.

When deciding whether a claimant is eligible to receive disability benefits, the Commissioner applies a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920.  If a definitive finding of either disability or non-disability can be made at any step along the way, the inquiry ends.  20 C.F.R. §§ 404.1520(a), 416.920(a).

At the first step, the Commissioner asks whether the claimant

...

is engaged in substantial gainful activity.  If so, claimant is not disabled.     20 C.F.R. §§ 404.1520(b), 416.920(b).  If not, the Commissioner proceeds to steps two and three, and looks to medical evidence to assess whether the impairment or combination of impairments is severe enough to significantly limit the claimant's ability to work.  §§  20 C.F.R. 404.1520(c), 416.920(c).  If so, the Commissioner compares the claimant's impairment to the List of Impairments at 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii) and 416.920(a)(4)(ii)-(iii).  If the Commissioner finds a match, the claimant is found to be disabled.   20 C.F.R. §§ 404.1520(d), 416.920(d).

    If the claimant's impairment does not appear on the List, then the claimant must prove that her condition is so severe as to prevent her from performing her prior work.    20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant is truly unable to perform her prior work, then the Commissioner must determine whether there is any other work within the national economy that the claimant would be able to perform.  20 C.F.R. §§ 404.1520(f), 416.920(f).  At this, the fifth step, the Commissioner takes into account the claimant's age, education, past work experience, and residual functional capacity.  Id.  It is only at this final step in the process that the burden of proof shifts from the claimant to the Commissioner, and the Commissioner must show that there is work that is both suitable for the claimant and available in the

national economy.  Ferguson v. Schweiker, 765 F.2d 31, 36 (3d Cir. 1985).

Since the ALJ in this case found that Ms. Salles had the residual functional capacity to continue working as a telemarketer, he denied her application for benefits.  Ms. Salles therefore claims that the ALJ erred at step two (severity) and step four (RFC) of the analysis.  She asks the Court to reverse the decision and instate her benefits as of April 10, 2001, or to vacate the decision and remand the case.  The Court concludes that the findings of the ALJ are substantially supported by the evidence, and it therefore affirms his decision.

**B. The Conclusions of the ALJ are Supported by Substantial Evidence**

Plaintiff argues that the ALJ failed to properly consider all the evidence proving the severity of her impairments.  The ALJ found her degenerative disc disease and her left-eye blindness to constitute severe impairments within the meaning of the Regulations, "but not severe enough to meet or medically equal" one of those included in the Listing of Impairments.[7]  (R. at 18.)  Ms.

---

[7]This conclusion is based on the lack of evidence of "disc herniations or resultant spinal stenosis contributing to any motor, sensory, or reflex deficits as required by listing 1.04, pertaining to spinal disorders," and a similar lack of evidence of "impaired central visual acuity, contraction of peripheral visual fields, or loss of visual efficiency to the degree mandated by listings 2.02, 2.03, and 2.04, respectively."  (R. at

Salles contends that the ALJ also should have considered her viral infections and depressive disorder in his determination, and that his failure to do so constitutes reversible error.

1.  Ms. Salles's Viral Infections Do Not Severely Limit her Functional Capacity

While the Court is sympathetic to Ms. Salles's condition and the difficulties and discomfort caused by her viral infections, the evidence does not conclusively demonstrate that the impact of these infections is so severe as to render her disabled. The ALJ noted correctly that there is no demonstration of definitive functional restrictions that can be attributed to hepatitis or HIV. (R. at 18.)  In stating that Ms. Salles was "currently" unable to work due to her back pain and hepatitis C, the report of Plaintiff's treating doctor, Dr. Miller, may be read to indicate that her condition was treatable, and that treatment was imminent. (R. at 150.)  Indeed, the only practical effect of the hepatitis infection seems to be a medical decision not to perform a cholecystectomy, as cited by Dr. Goldberg. (R. at 170.)  Since Dr. Golderg's report goes on to conclude that Ms. Salles's cholecystitis had been effectively treated with antibiotics alone, it appears that any adverse impact resulting from hepatitis has been under control since at least September of 2001. Id. The ALJ's conclusion that

---

18.)

there are no functional restrictions resulting from the hepatitis infection is thus supported by the evidence.

2. Evidence of Ms. Salles's Alleged Depressive Disorder Was Not Properly Before the ALJ

The evidence likewise does not indicate any functional limitations stemming from Plaintiff's HIV infection.  While it is conceivable that the psychological impact of learning of an HIV diagnosis might be severe, it is important to note that the ALJ was unable to consider evidence of such psychological impairment, or any other HIV-related impairment, as Plaintiff's counsel[8] did not submit this evidence for his consideration.  With the exception of the testimony of Ms. Salles herself (R. at 43-44), the record as reviewed by the ALJ is silent on her HIV status.  Similarly, outside of the UBH records, there is no evidence of depression.

Although Plaintiff argues indignantly against the ALJ's failure to "mention" her HIV infection and "major depression" (Pl. Br. at 17-18), evidence that "was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence."  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001) (citing Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)); see also U.S. v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963) ("a

---

[8]It should be noted that Plaintiff is represented by different counsel in the current proceeding.

decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body"). Where a claimant relies on evidence not before the ALJ, however, *and* where the evidence is new and material, *and* where the claimant can show good cause for not presenting the evidence to the ALJ, the district court has the option of remanding to the Commissioner. <u>Matthews</u>, 239 F.3d at 593.

The Court can state unequivocally that Plaintiff has not shown good cause for failing to submit the UBH records to the ALJ. At counsel's request, the ALJ agreed to hold the record open until May 9, 2003, to give Plaintiff time to receive the UBH medical records. (R. at 29.). On May 8, 2003, Plaintiff's counsel requested an additional extension, until May 23. (R. at 331.) The ALJ apparently acquiesced, as he did not issue his decision until May 23, 2003. (R. at 21.) The UBH cover letter states that the records were sent to Plaintiff on May 8, 2003, which would have left counsel sufficient time to review before forwarding to the ALJ. (R. at 276.) Plaintiff offers no explanation for counsel's failure to submit this evidence to the ALJ, and the Court thus finds that remand is improper[9].

---

[9]Since 42 U.S.C. § 405(g) requires new evidence to be material *and* that there be good cause for failing to include it in the record, and since good cause has not been shown, remand is inappropriate, and this Court does not need to reach the question of whether the evidence of depression was material.

3. The ALJ Properly Considered Ms. Salles's Credibility Regarding Subjective Symptoms

The ALJ noted that Ms. Salles was monocular, but that she had been so "for decades, and [that condition] has not previously precluded [her] from engaging in substantial gainful activity." (R. at 18-19.)  Plaintiff argues that the ALJ should have given additional weight to her problems with the right eye, i.e. blurred vision, "constricted visual fields," and "an inability to see clearly and peripherally."  Pl. Br. at 19.   With regard to subjective symptoms, the ALJ considers reports from treating and consulting doctors, as well as evidence of medical history, daily activities, efforts to work, and statements from the claimant.  20 C.F.R. §§ 404.1529 and 416.929.  Statements made by the claimant are not conclusive evidence of disability, as they must be reasonably consistent with the medical reports.  Id.  The ALJ's responsibility is therefore to examine Ms. Salles's statements in

---

It would be grossly inequitable, however, to allow the Plaintiff to suffer for the conduct of her former counsel, and with an eye toward the equities, the Court reviewed the UBH records in an effort to determine whether their inclusion would have been likely to lead to a different result.  The treatment records reveal that Ms. Salles fared well on a six-month course of medication and therapy.  Her treatment goals, which she helped to establish, were to eliminate panic attacks and to achieve a "euthymic" mood.  (R. at 301.)  By April 1, 2003, the UBH records show that Ms. Salles was "doing well, has noticed decrease in anxiety and tearfulness," and that her "mood [was] euthymic." (R. at 305-06.)  Since Ms. Salles responded well to treatment, the Court finds it unlikely that the ALJ would have been moved by this evidence to conclude that her depression constituted a severe impairment.

light of the objective medical evidence received into the record in order to determine the extent to which her complaints are consistent with the reports.

The medical evidence pertaining to Ms. Salles's eyesight is not consistent with her statements. Dr. Press reported that her right-eye best corrected vision was 20/30, that her response to light was normal, and that the fundus was normal. (R. at 173.) Dr. Roque's findings were similar, except that she found the corrected vision to be 20/40. (R. at 214.) Neither report indicates an objective reason for the types of ocular problems of which Ms. Salles complains. The ALJ's conclusion regarding the severity of Ms. Salles's visual impairments is thus supported by substantial evidence.

**C. The ALJ's Determination of Ms. Salles's RFC was Proper**

Plaintiff further argues that the ALJ did not sufficiently explain the reasoning behind his determination of Ms. Salles's residual functional capacity, and that the ALJ erred in concluding that Ms. Salles could perform her past relevant work. Pl. Br. at 19, 31. The Court, however, finds an extensive and satisfactory explanation of the basis for the ALJ's determination.

The ALJ is obligated to "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudek v. Comm'r of Soc. Sec. Admin., 181 F.3d

429, 433 (3d. Cir. 1999).  The Court finds that this was properly done, as the ALJ's opinion clearly sets forth the evidence he has accepted and provides reasons for his rejection of the other evidence.  In contending that the ALJ erred, Plaintiff fails to recognize that the symptoms lacking adequate evidentiary support were not simply ignored, but rather were rejected as lacking credibility.

For example, in finding that Ms. Salles's claims of diarrhea were not credible, the ALJ stated that he considered the reports of Drs. Miller and Roque, as well as the University Hospital records, and found "no documentation of such a manifestation in any of the treatment reports."  (R. at 19.)  Similarly, while Ms. Salles testified that she had been prescribed a cane, the record does not reveal any instances where the cane was actually in use.  Ms. Salles's own testimony revealed that the only back and hip treatment recommended by any of her doctors was physical therapy/exercise and pain medication on an as-needed basis. (R. at 40-41.)  And, while there is clinical evidence of degenerative disc disease, Dr. Roque's examination revealed "full motor and sensory functioning, with no assessed limitations in sitting, standing, or walking."  (R. at 19, 215.)

The ALJ also noted that Ms. Salles's account of her "activities of daily living further show that she is not incapacitated.  She is fully independent in all aspects of personal

care, and ... [s]he is able to travel independently by means of public transportation."[10] (R. at 19.) Based on this evidence, the ALJ found that Ms. Salles's subjective complaints as to her ambulatory ability were not credible. Likewise, as discussed above, the ALJ found insufficient evidence of visual impairment relating to her right eye. Exclusion of these alleged limitations from the RFC assessment was therefore proper, as the ALJ is required to consider subjective symptoms only to the extent to which those symptoms "can be reasonably accepted as consistent with the objective ... evidence." 20 C.F.R. §§ 404.1529 and 416.929.

Since the ALJ's conclusions as to credibility are to be accepted "unless they are without basis in the record," and "an ALJ's credibility determinations are entitled to great deference and should not be discarded lightly," Baum v. Barnhart, 107 Soc. Sec. Rep. Service 646, at *28-29 (E.D. Pa. 2005), the Court concludes that ALJ Ryan's findings as to Ms. Salles's credibility have adequate support in the record, and it thus turns to the determination of residual functional capacity.

The ALJ determined that Ms. Salles is able to perform "light work," which involves lifting no more than twenty (20) pounds at a time, with more frequent lifting or carrying up to ten (10) pounds at a time. 20 C.F.R. § 404.1567(b). This category includes jobs

---

[10]See also Ms. Salles's testimony before the ALJ, R. at 34-37.

that require walking, standing, or "sitting most of the time with some pushing and pulling of arm or leg controls." Id. The ALJ specified that the work must not require binocular vision, and that Ms. Salles must not work "in proximity to hazardous machinery or at unprotected heights." (R. at 19.) Since the telemarketing job Ms. Salles described and once held did not require any exertion beyond the "light work" parameters, the ALJ concluded that Ms. Salles is capable of performing her past relevant work.

Although Plaintiff argues that this determination wholly contradicts the evidence presented, Plaintiff's argument relies upon the acceptance of evidence that the ALJ has found to be incredible. As the fact-finder, the ALJ is responsible for balancing the weight of the Plaintiff's testimony with the weight of the other evidence, including the reports of treating and consulting doctors, and for reaching a conclusion as to the extent and severity of Plaintiff's symptoms. See Williams v. Sullivan, 970 F.2d 1178, 1186-87 ("The fact-finder has an obligation to review all the evidence of record to decide whether or not the claimant's testimony is credible. ... the Secretary has an obligation to weigh the medical evidence and make choices between conflicting medical evidence.") (internal citations omitted). The ALJ has provided sound reasons for his choice to credit certain pieces of evidence over others, and Plaintiff's contention that she is unable to perform her past relevant work is therefore untenable.

-19-

**III. Conclusion**

    For the reasons stated above, the Court **affirms** the Commissioner's decision to deny Ms. Salles's application for Supplemental Social Security Income benefits. An appropriate Order follows.

March 31, 2006

                                       /S/WILLIAM G. BASSLER  
                                       William G. Bassler, U.S.S.D.J.